Marilyn PRINCE, Plaintiff,

v.

MICHELIN NORTH AMERICA, INC., Defendant.

No. 01–0654–CV–W–FJG.

United States District Court, W.D. Missouri, Western Division.

Jan. 29, 2003.

Dan H. Ball, Lisa A. Keesling, Bettina Joist Strauss, Bryan Cave LLP, St. Louis, MO, for Michelin North America, Inc.

Lydia JoAnn Barrett, Richard L. Denney, Denney & Barrett, P.C., Norman, OK, Bruce R. Kaster, Adams & Boughton, Kirksville, MO, Robert J. Luder, John R. Weist, McCormick Adam & Long, PA, Overland Park, KS, for Marilyn Prince.

Gary R. Cunningham, Cunningham, Harpool & Cordonnier, Springfield, MO, Robert J. Haddad, Troy, MI, for Daimler Chrysler Motors Corp.

Douglas Neil Ghertner, Slagle Bernard & Gorman, PC, Kansas City, MO, for Honeywell Intern., Inc.

Elizabeth C. Helm, Holland & Knight, LLP, Atlanta, GA, Julie Westcott, Berkowitz, Stanton, Brandt, Williams Shaw, LLP MO, Kansas City, MO, for Michelin Americas Research & Development Corp.

### ORDER

GAITAN, District Judge.

Pending before the Court is Defendant's Motion in Limine to Exclude the Expert Witness Testimony and Opinions of Plaintiff's Expert, Dr. Robert J. Block. (Doc. No. 76).

### I. Background.

The present suit is before the Court pursuant to the Court's jurisdiction over suits between citizens of differing states. This case concerns product liability in an automotive fatality, and plaintiff brings claims of alleged defective tire manufacture or assembly, defective tire design and testing, defective marketing, and failure to warn, recall or correct in regard to the tire at issue. Plaintiff's claims are governed by the substantive law of the State of Missouri.

In defendant's motion to exclude, defendant asserts that Dr. Block is not qualified to offer opinions regarding tire design and manufacture. Specifically, defendant contends that Dr. Block has no experience with tire design or manufacture and that Dr. Block, himself, does not believe that he is an expert in tire design, tire materials, or tire manufacturing process. Further, defendant asserts that Dr. Block's proposed testimony is not reliable and is not based on sound methodology.

Plaintiff responds that Dr. Block, an engineer, is imminently qualified as an expert in material sciences or failure analysis. Plaintiff asserts that Dr Block's proposed testimony and opinions are based upon accepted principles of science and physics and that tires are not exempt from these principles. It does not appear that Dr. Block intends to testify regarding inadequate warnings in regard to the tire at issue. However, plaintiff states that if Dr. Block testifies "out of his 'area of expertise' as suggested by [Michelin North America], what better cross-examination can be envisioned than to demonstrate to the jury that Plaintiff's primary material failures expert is not qualified?" The Court notes that plaintiff misconstrues the Court's gate-keeping role, the Federal Rules of Evidence, and the U.S. Supreme Court's dictates regarding the admission of expert testimony.

### II. Discussion.

■■■ As a preliminary matter, "[t]he proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir.2001). Further, the Court is in possession of ample evidence contained in the written record and does not find it necessary to conduct a hearing regarding the contested expert testimony of Dr. Block. *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 152—53, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Additionally,

Federal Rule of Evidence 702 governs admissibility of expert testimony. *See Fed.R.Evid. 702.* "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." *Weisgram v. Marley Co.,* 169 F.3d 514, 523 (8th Cir.1999), *aff'd,* 528 U.S. 440, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000); *see also Daubert [v. Merrell Dow Pharm.,* 509 U.S. 579,] 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (citing *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 169, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988)) (highlighting the " 'liberal thrust' of the Federal Rules and their 'general approach' of relaxing the traditional barriers to 'opinion testimony' "). The rule clearly "is one of admissibility rather than exclusion." *Arcoren v. United States,* 929 F.2d 1235, 1239 (8th Cir. 1991).

The proposed expert testimony must meet three prerequisites in order to be admitted under Rule 702. 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.02[3] (2001). First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. *Id.* This is the basic rule of relevance. Second, the proposed witness must be qualified to assist the finder of fact. *Id.* Third, "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires ...." *Id.; see also Daubert* 509 U.S. at 591, 113 S.Ct. 2786.

*Lauzon,* 270 F.3d at 686. "The rule's concern with 'scientific knowledge' is a reliability requirement, while the requirement that the evidence 'assist the trier of fact to understand the evidence or determine a fact in issue' is a relevance requirement." *Bonner v. ISP Techs., Inc.,* 259 F.3d 924, 929 (8th Cir.2001) (quoting *Heller v. Shaw*

*Indus.,* 167 F.3d 146, 152–53 (3d Cir. 1999)). "The only question relevant to the admissibility of the scientific evidence is whether it is sufficiently reliable and relevant to assist the jury's determination of a disputed issue." *Id.*

■ In the seminal case regarding expert opinion testimony, *Daubert v. Merrell Dow Pharmaceuticals,*

the U.S. Supreme Court emphasized the district court's gatekeeper role when screening expert testimony for relevance and reliability.... *Daubert* provides a number of nonexclusive factors a court can apply in performing this role: 1) whether the theory or technique can be (and has been) tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the theory has been generally accepted.... *Daubert's* progeny provides additional factors such as: whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.

270 F.3d at 686—87 (internal quotation marks and citations omitted). Additionally, "a district court must continue to perform its gatekeeping role by ensuring that the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,* 254 F.3d 706, 715 (8th Cir. 2001) (citing *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 156, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

■ In the present case, defendant asserts that plaintiff's proposed expert, Dr.

Block, is not an expert regarding tire manufacture or tire design. Plaintiff asserts that Dr. Block is proposed as an expert in tire manufacture and tire design in that Dr. Block is an expert regarding material sciences or failure analysis. Although this may appear to be a mere semantical difference, the Court does not interpret it as such in light of the record before the Court. The Court notes that the differing areas of expertise need not be mutually exclusive; however, it is equally true that expertise in the fields of material sciences or failure analysis does not encompass expertise in the areas tire manufacture or tire design. *See Kumho Tire*, 526 U.S. at 154, 156, 119 S.Ct. 1167 (stating that "[t]he trial court must determine whether this particular expert has sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case" and stating that the court must determine the reasonableness of an expert's methodology "regarding *the particular matter to which the expert testimony was directly relevant* ") (internal quotation marks omitted) (emphasis in original); *Wheeling*, 254 F.3d at 715 (finding that hydrologist's expertise in flood risk management does not qualify as expertise in safe warehousing practices); *Weisgram v. Marley Co.*, 169 F.3d 514, 518—21 (8th Cir.1999) (finding that fire cause and origin expert was not an expert in regard to product malfunction, finding that fire investigator and technical forensic expert was not qualified as an expert in product failure, and finding that metallurgist was not an expert in fire cause and origin, in product operation, or in product design and testing); *Robertson v. Norton Co.*, 148 F.3d 905, 907 (8th Cir. 1998) (finding that expertise in manufacturing defect does not qualify as expertise in product warning). Defendant does not contest Dr. Block's expertise in the fields of materials science or failure analysis. Rather, defendant asserts that Dr. Block has not proposed reliable and relevant

opinions in the areas of tire manufacture and tire design. As to material sciences and failure analysis, Dr. Block's qualifications are sufficient to allow Dr. Block to offer his opinion as to the behavior and state of the polymer materials which composed the tire at issue and to offer his opinion as to how the behavior and state of the polymer materials affected the failure of the tire at issue. Therefore, the Court will review Dr. Block's contested, proposed area of expertise, tire manufacture and tire design, under Federal Rule of Evidence 702 in relationship to pertinent factors propounded by *Daubert* and its progeny.

## A. Theory or Technique Tested.

Dr. Block employed the technique of visual examination of the tire at issue. Dr. Block's visual inspection may be a reasonable methodology in certain circumstances. *See Kumho Tire*, 526 U.S. at 153—54, 119 S.Ct. 1167 (discussing visual and tactile inspection). However, Dr. Block, in his report dated May 13, 2002, concluded without explanation that failure of the tire at issue was "the result of defects in the design, materials and/or manufacture." Dr. Block does not state his methodology for making this analytical leap. Further, in Dr. Block's Affidavit dated October 22, 2002, he avers that the tire at issue failed because of separation between the two steel belts of the tire, that the separation was facilitated by changes in the properties of the rubber, and that due to aging the rubber became embrittled. Dr. Block then generally states that the aging of rubber may be addressed in a change of materials utilized, in a change of manufacturing processes to produce more reliable bonding, or in a change of tire design to produce a structure that will be less affected by the aging of rubber. However, Dr. Block does not state in any manner how these changes relate to the tire at issue.

Dr. Block does not state that incorporation of any of these changes would have affected the performance of the tire at issue or that the tire at issue lacked any of the changes that he proposes. Therefore, this factor weighs against Dr. Block's proposed testimony as it relates to defects in tire manufacture and tire design.

## B. Peer Review and Publication.

Dr. Block states that he has taught multiple classes regarding the behavior of polymer materials in particular and that he has taught regularly scheduled courses in failure analysis. Further, Dr. Block states that numerous textbooks describe the effect of aging on elastomers in the causation of embrittlement. However, plaintiff points to neither publication nor peer review in regard to tire manufacture, tire design, or application of visual inspection in the determination of tire manufacture or design defect. Therefore, this factor weighs against Dr. Block's proposed testimony as it relates to defects in tire manufacture and tire design.

## C. Rate of Error and General Acceptance.

Neither plaintiff nor Dr. Block mentions rate of error or general acceptance of the methodology and analysis employed by Dr. Block. Therefore, these factors weigh against Dr. Block's proposed testimony as it relates to defects in tire manufacture and tire design.

## D. Expertise Developed for Litigation.

Defendant asserts that the only experience Dr. Block may possess in regard to tire manufacture and design was acquired for the purpose of acting as an expert in tire litigation. Defendant points to Dr. Block's deposition testimony taken from another case involving alleged tire defect. Neither plaintiff nor Dr. Block states the basis of Dr. Block's alleged expertise in tire manufacture or tire design. Instead, plaintiff and Dr. Block point to Dr. Block's experiences in regard to material sciences and failure analysis. Further, Dr. Block's Curriculum Vitae reveals no foundation for expertise in tire manufacture or tire design. Therefore, this factor weighs against Dr. Block's proposed testimony as it relates to defects in tire manufacture and tire design.

## E. Alternative Explanations.

Dr. Block's Report and Affidavit offer alternative explanations for the alleged failure of the tire at issue. Therefore, this factor weighs in favor Dr. Block's proposed testimony as it relates to defects in tire manufacture and tire design.

## F. Connection of Proposed Testimony to Facts of This Case.

The present case sounds in product liability under the substantive law of the State of Missouri, and testimony regarding manufacture or design defect is highly relevant. However, Dr. Block's qualification in material sciences and failure analysis does not give him the necessary experience, neither from his work as an educator and engineer nor from any tests performed in connection with this case, to be qualified as an expert who could testify that the tire at issue failed because it was defectively designed or manufactured. *See Weisgram*, 169 F.3d at 521 (employing same analysis in regard to metallurgist as proposed design and manufacture expert). Therefore, this factor weighs against Dr. Block's proposed testimony as it relates to defects in tire manufacture and tire design.

## III. Conclusion.

Having reviewed all submissions of the parties in light of the dictates of Federal Rule of Evidence 702 and the pertinent factors propounded by *Daubert* and its

progeny, the Court finds that plaintiff has not shown by a preponderance of the evidence that Dr. Block's proposed testimony regarding tire manufacture and tire design is reliable. Therefore, the defendant's motion (Doc. No. 76) is **GRANTED** in the following manner: Dr. Block may offer his opinion as to the behavior and state of the polymer materials which composed the tire at issue and offer his opinion as to how the behavior and state of the polymer materials affected the failure of the tire at issue; Dr. Block shall not speculate that failure of the tire at issue was caused by a defect in tire manufacture or a defect in tire design.

**IT IS SO ORDERED.**